Good morning, your honors. Ina Lipkin on behalf of the petitioner. This is an immigration matter, and the petitioner asks the court to review the IJ's decision as the BIA affirmed without opinion. This is a case where the IJ clearly ignored the threats of harm that the petitioner experienced that constitute past persecution and a well-founded fear for the future of the IJ. The IJ completely discounted the threats by the BJP party and the police against the petitioner while he lived in India and after he had already departed as recounted to him by his mother and by the head of the village. Do you think that he has suffered persecution before he left? Yes, your honor. There's numerous case law recited in the brief. I'm less interested in the case law. I'm more interested in what happened to him before he left that amounts to persecution. Okay. On June 5th of 2001, individuals came to his farm and threatened him. He was not there, though. The next day, the police came to arrest him. Again, luckily he was not there. Based on the information he gleaned from his family after he had left, he understood that while he was still in India, the purpose of his arrest was because of his political activities and his membership in a social group which constituted his father. And if you look at his very credible testimony, what the IJ found credible, the police had accused his father of anti-national sentiments due to his membership in the political group of Shirmani Akali Dalman, which advocates callous down a separate Sikh state. The petitioner was also a member of the very same group. Just to make sure I've got it right, and this is my understanding of the record, nothing physical happened to him while he was in India in the sense of having been arrested, having had rollers over his legs, the sorts of things you often see in these cases. None of that happened? Absolutely. It was purely threats. Yes. Nothing physical in nature occurred to him. The harm he suffered was in the form of threats and threats to his family members, which include his father. Yes, right. Now, if in our view that doesn't constitute past persecution while he was in India, you can still prevail if you show he has a well-founded fear of persecution upon his return. Right. What did he do while he was in India? My sense is that his father was more of an activist than he was. Is that right? You know, there was no finding by the IJ in that regard, and in fact, viewing the testimony as credible as the IJ had done, the petitioner had actually testified to a wide range of activities for the group, including canvassing, fund collecting, voting. There was a list of things that he had done. There, I don't believe, was very detailed testimony to compare what his father had done. I don't know that he had listed what his father had done. However, there was nothing in the IJ's decision that would indicate that she doubted his membership or that his membership was dubious in any way. To answer your question, if I may, you had posed, if he didn't find past persecution, does he have any relief? And, again, even if the court doesn't find that the threats he suffered rose to that level, the threats still, the threats alone and then the subsequent death of his father at the hands of police and then the summons by the police for the petitioner to appear and then later the death of his father. As told by his mother, the police allegations that he now cohorts with militants abroad because he's in the United States, those facts would then support his well-founded fear of persecution. Again, this court has found in a variety of cases that even if threats alone are insufficient for a past persecution, they may very well make a finding of a well-founded fear, in which case the court should then remand to let the parties introduce further evidence regarding that well-founded fear. I'd like to ask you about the change to country conditions. I certainly have the impression that things are a lot better in the Punjab. And the Indian police are not as brutal to the Sikhs as they used to be. What do you think on that score? Well, I think that, again, the parties should be able to address that issue, what is the situation today in 2009, as the court hearing was in 2004 or 5. Even if the conditions have improved, if the petitioner can establish that the police are still interested in him with objective proof, then he would still prevail. I don't think that there's... Well, why would he if they were much better? You know, Your Honor, it's hard to say because the petitioner has submitted a quantity of documentation to show that even if things seemingly have improved, the police continue to act with absolute impunity. There's nothing to stop them from, again, harassing individuals who they suspect, whether falsely or with basis of militancy. Okay. I think I'll reserve my time for rebuttal. Thank you. Yeah, you've saved almost four minutes. Good morning, Your Honors. May it please the court, Charles Cantor for the Attorney General. Your Honors, I don't have much to add beyond our briefs. In answer to your question, Judge Fletcher, about Mr. Singh's role in this party, there is some testimony on that at pages 86 and 87 in the record. He was asked, who was more active in the party, your father or you? He says, answer, first I did, no, that means first it was my father. Then when they beat my father, I became more active. What activities did you have with the party after your father was beaten in 2001? After that, I went to a party meeting. Is that the only activity you had? And long story short, after four or five questions, basically, yes. He simply went to meetings. And his own testimony is that his father was the one who was more active. He did engage in some activities in 1999 related to an election. And those activities were public, so it's not as though he just went to meetings and nobody ever saw him. Correct, correct. And that was in 99. There was no problems. It wasn't until for some reason police became interested in his father in 2001. Was there any finding of specifically what happened to his father? No, there was not, Your Honor. He, I think, intimated that his father was arrested in April 2002. He was held for five days, released, and then the following month he died. But there's no indication of who the perpetrator was, is there? I believe it was the police the second time. There's a problem throughout the record, Your Honor. Basically, there's a confusion between police and BJP party members. And it's not clear, you know, on the one hand, men come without, not in uniform and make threats. And then the next day, police come and ask to speak to the respondent, or petitioner, excuse me. Actually, the testimony as to the, he was not actually threatened with arrest, the petitioner was not threatened with arrest. They simply asked his mother. He was threatened by BJP members, that is, they relayed threats to his mother. And then they came, the police came and asked to speak with him. I think, although I don't think there's any ambiguity in his testimony as to who did it to his father. On page 23, or 82 of the AR, the police beat him so severely and after the beating he was elderly, he passed away. I mean, he says the police did it. And whether, I guess maybe I was confused a bit by Judge Tashima's question. I think that is clear that it was the police, it appears to be the police, as far as the arrest. It's not clear the cause of the death. That he died directly as a result of the beating. That's correct. That's not clear. The only, he, this is his testimony and then his mother's letter is simply, which is at page 62 of the administrative record. Or 162, excuse me, Your Honors. It's just a one sentence conclusion. My husband, part number line four there, my husband, Nek Singh, died in May 2002 due to police harassment. There's not a finding, specific finding, I think it's to the cause of death. It does appear that it was police, but I would say that throughout the record there's police and then there's these BJP members and it's not entirely clear. Well, it seems to me that the immigration judge didn't pay much attention to the traumatic effect of having his father killed. I mean, there's no other reason for his father dying that we can see in this record, except that he'd been arrested by the police. He was someone that was being harassed because of his political activity. And the son knows that and he's associated with his father in that kind of activity. Isn't that an incident of sufficient gravity to make him objectively fear persecution? Well, not necessarily, Your Honor. First, because it's, as Judge Fletcher pointed out, it's more his father seems to be the one who's more interested. Well, you know, and these people engage in political reprisals, they don't distinguish too much. Father and son, they're a unit. The son could well say, well, I'm tied to my father. They got him, they'll get me. And that's sort of the way the questions were. We want to see him. Isn't that the way the police talk? They did ask about him, yes. That's correct, Your Honor. And I guess maybe, again, with all these asylum cases, you know, it ultimately comes down to the standard of review. Is that sufficient for an immigration judge, you know, for his testimony to support it, to find that there's an objective fear? Well, I feel more objectively reasonable, yes. Well, let me say this. If she had addressed the question and said there isn't enough there, but she didn't, she just slid over it. She's an immigration judge, I think, highly of. And I'm sort of surprised she didn't address it. She did say that, well, it's certainly sufficient to support the subjective, right? Exactly, Your Honor. But apparently she was not willing to go beyond that, right? I think that's exactly right, Judge Tashima. She did make clear that she thinks that the fears are subjectively held by Mr. Singh. Her decision is. The question for us is, I mean, is the record sufficiently compelling that in those circumstances, she should have went on to find that it also supported a subjective fear, right? Right. That's the question. It's whether the record compels that conclusion. And I understand Your Honor's concern. It's a relatively brief decision for some of these immigration cases. She could have gone on and discussed perhaps in more detail, but she didn't do that. And the issue here isn't whether she – the court doesn't reverse simply because it would have liked more analysis. It has to reverse because the record compels a contrary conclusion. Do you want to say a word about change to country conditions? Well, Your Honor, yeah. I think when it comes to change conditions, Your Honor, there's – in this decision, there's not a specific finding that conditions have changed such that any, for example, any presumption would be rebutted. To the extent change conditions have come up, it's in the discussion of things are better now in Punjab, that is now in 2003 when the immigration judge was making her decision, and the early 90s where they were quite bad. We cited a case in the Second Circuit, and I can update that site, 435F3216, discussing some of those change conditions. There have since been more change conditions. You know, how that affects this court's review of this record, I think the court might consider it in the context perhaps of futility, if remand would be futile, because if there is remand and more evidence taken, it would only weaken Mr. Singh's case. I mean, the prime minister of India is himself a Sikh since Mr. Singh has left. The prime minister is what? He's a Sikh. Yeah. When did Mohammad Singh become prime minister? I believe, I thought it was 2004, Your Honor. Okay. If you don't know specifically, don't guess. Yeah, okay. Sorry, Your Honor. I do not know for sure. But in addition, I think then there would be, there would also be the issue of, on remand, you know, there would be an issue of internal relocation. India is a big country. His problems are local. So I think the court can consider those in the context perhaps of whether remand would be futile, not necessarily, you know, looking at this on this record. I don't know that there's a specific change conditions finding, however. Has the petition been denied? Thank you very much, Your Honor. Thank you. Response? Your Honors, I wanted to first address the issue of the prime minister of India. Mohinder Singh is a member of the Congress Party. It was the Congress Party that led the attacks in June of 1984 against the Golden Temple in Amritsar, which resulted in the slaughter of thousands of Sikhs and pretty much propelled the pro-Khalistani movement. So I don't think that the fact that he's a Sikh is dispositive at all, considering his membership in the Congress Party. That said, I also want to turn, again, to the issue of the changed country conditions. It's the government's burden to show that conditions have changed. As the record stands right now, there is nothing compelling here to show that conditions have changed, and the IJ in her decision failed to cite any specific facts in the background materials on country conditions that would indicate that it is safe for the petitioner to return. Addressing some of the other things that were raised by the government, in fact, on direct examination without any prompting, the petitioner himself explained and testified as to his duties as a member, stating that he made announcements during elections and put up posters on page 72 of the record, participated in the 97 elections, page 87, in the 99 elections, page 72, canvassed door-to-door, page 73, made announcements from loudspeakers, 73, and took people to meetings, 86. So, in fact, he did quite a few things. And he did them publicly. He did them publicly, exactly. It's clear that the police had categorized him also as someone anti-national. For whatever reasons, they targeted his father first. It's really not in the record why, but they did. We've got to take his testimony as truthful, because the IJ did, and have to believe that the police did do that to his father. And for whatever reasons, perhaps it's his membership in a social group and that familial tie with his father, but they then placed their interest in him. The interest is continuing, because even during the father's arrest, they questioned the son's whereabouts, the petitioner's whereabouts. They wouldn't do that unless they had an interest in him. And the fact that even after he departed India, they demanded that he appear and that they accused him falsely of militancy, and there's nothing in the record to show that he engaged in militancy. And he disavowed that he had anything to do with militancy, page 82. Then we can only assume that the interest of the police in the petitioner is not legitimate, and therefore he has demonstrated an objective basis for a well-founded fear. Thank you. Okay, thank you very much. Thank both sides for your helpful argument. The case of Singh v. McKeezy is now submitted for decision.
judges: Noonan, Tashima, Fletcher